UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

RYSKELDI TOLOGONOV,                     )
                                        )
                    Petitioner,         )
                                        )
            v.                          )        No. 2:26-cv-00413-JPH-MJD
                                        )
WARDEN CLAY COUNTY JUSTICE              )
CENTER, *et al.*,                       )
                                        )
                    Respondents.        )

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Noncitizen Ryskeldi Tologonov is detained at the Clay County Jail on behalf of U.S. Immigration and Customs Enforcement (ICE). Mr. Tologonov seeks a writ of habeas corpus requiring Respondents to release him from custody.

For the reasons explained below, the Court grants the petition to the extent that it orders the respondents to either afford Mr. Guerrero Salgado a bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) and its regulations or release him from custody under reasonable conditions of supervision.

## I. Facts

Mr. Tologonov is a citizen and national of Kyrgyzstan. He applied for admission to the United States at the San Ysidro Port of Entry in March 2023. Immigration officials deemed Mr. Tologonov inadmissible but granted him parole through March 11, 2024, and permitted him to enter the United States. Dkt. 8-1 at 2. The government also initiated full removal proceedings under 8 U.S.C. § 1229a. *Id.* at 4.

1

Mr. Tologonov established residence in Illinois and promptly applied for asylum. Dkt. 1-4. However, neither his asylum application nor his removal case was resolved when his parole expired in 2024, and he did not leave the United States. Both proceedings remain pending.

On June 9, 2026, an Indiana State Police (ISP) trooper detained Mr. Tologonov for a traffic stop, the basis for which is not documented in the record. Dkt. 8-1 at 2. ISP contacted ICE, which issued an administrative warrant "command[ing]" that Mr. Tologonov be arrested pursuant to 8 U.S.C. § 1226. *Id.* at 2, 8. He was taken into ICE custody, and he remains in ICE custody at the Clay County Jail. He has not received a bond hearing.

## II. Analysis

Mr. Tologonov alleges that his continued detention without a bond hearing violates the Constitution and laws of the United States—namely, the Immigration and Nationality Act (INA) (8 U.S.C. § 1226(a)), the Fifth Amendment's due process clause, and the Constitution's protection against suspension of the writ of habeas corpus—and entitles him to either immediate release or a bond hearing. The respondents argue that the INA not only authorizes but requires his detention pursuant to 8 U.S.C. § 1225(b)(2)(A).

Consistent with this Court's previous orders, Mr. Tologonov's detention is governed by 8 U.S.C. § 1226(a) and is unlawful because he has not been afforded a bond hearing. Accordingly, the Court orders the respondents to afford him a bond hearing or release him from detention.

## A.   8 U.S.C. §§ 1226 and 1225

At issue here are 8 U.S.C. § 1226 and § 1225. While "§ 1226 applies to aliens already present in the United States," U.S. immigration law also "authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). Section 1226 governs the "usual" removal process, which involves an evidentiary hearing before an immigration judge. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Proceedings are initiated under 8 U.S.C. § 1229(a), also known as "full removal," by filing a Notice to Appear with the Immigration Court. *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011).

> Section 1226(a) provides:
>
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. [T]he Attorney General—
>
> (1) may continue to detain the arrested alien; and
>
> (2) may release the alien on—
>
>> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>>
>> (B) conditional parole[.]

An immigration officer makes the initial determination to either detain or release the noncitizen. After that initial decision has been made, "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)); *see also* 8 C.F.R. § 1236.1(c)(8). At that hearing, the noncitizen "may secure his release if

he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019) (citing 8 C.F.R. §§ 1003.19(a), 1236.1(d)); *see also Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017) ("[T]he burden is on the non-citizen to 'establish to the satisfaction of the Immigration Judge . . . that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight.'") (citing *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006)).

Section 1225(b)(1) deals with "inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled" and provides that immigration officers shall order certain noncitizens removed without further hearing or review unless the noncitizen indicates an intention to apply for asylum. § 1225(b)(1)(A)(i). This applies to noncitizens who have engaged in misrepresentation or have failed to meet document requirements under §§ 1182(a)(6)(C) or 1182(a)(7). *Id.*

Section 1225(b)(2) pertains to "[i]nspection of other aliens." Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). An "applicant for admission" is "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .)." 8 U.S.C. § 1225(a)(1). In other words, noncitizens subject to 1225(b)(2) are not eligible for

4

expedited removal but are subject to mandatory detention while their removal proceedings are pending.

**B.     Mr. Tologonov Is Eligible for a Bond Hearing Pursuant to 8 U.S.C. § 1226(a)**

The record reflects that Mr. Tologonov is eligible for a bond hearing under § 1226(a).

The Court has previously determined that, considering § 1225 as a whole, the most natural meaning is that it applies to "arriving" noncitizens attempting to enter the United States rather than undocumented aliens like Mr. Tologonov who have lived in the interior of the United States for years. *See Alejandro v. Olson*, 817 F. Supp. 3d 672, 677 (S.D. Ind. 2025); *Jackson Rizo v. Swearingen*, Case No. 2:26-cv-00026-JPH-MKK (S.D. Ind. January 23, 2026); *Corzo Martinez v. Olson et al.*, No. 2:26-cv-00003-JPH-MKK, Dkt. 13 (S.D. Ind. January 10, 2026). As the Court has previously explained, Respondents' interpretation of the statute (1) disregards the plain meaning of § 1225(b)(2)(A); (2) disregards the relationship between §§ 1225 and 1226; (3) would render a recent amendment to § 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice. *See Alejandro*, 817 F. Supp. 3d at 677.[1]

In December 2025, the Seventh Circuit issued an opinion in *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025)

---

[1] The Court incorporates by reference its more fulsome statutory interpretation of 8 U.S.C. §§ 1226 and 1225 and corresponding analysis of the circumstances to which those statutes apply as set forth in *Alejandro*, 817 F. Supp. 3d 672, *Jackson Rizo v. Swearingen*, Case No. 2:26-cv-00026-JPH-MKK (S.D. Ind. January 23, 2026), *Corzo Martinez v. Olson et al.*, No. 2:26-cv-00003-JPH-MKK, Dkt. 13 (S.D. Ind. January 10, 2026).

(*Castañon-Nava I*). There, the Seventh Circuit determined that "seeking admission" cannot be logically seen as synonymous with "applicant for admission" without violating several established canons of statutory interpretation. The Court has relied on that opinion as persuasive authority[2] and continues to do so after the Seventh Circuit's most recent opinion in *Castañon-Nava. See* 175 F.4th 828 (7th Cir. 2026) (*Castañon-Nava II*).

Although Respondents do not cite them here, two Courts of Appeals have issued recent decisions supporting the government's interpretation of § 1225(b)(2)(A). The Fifth Circuit Court of Appeals decision has determined that "seeking admission" is a permissible redundancy for "applicant for admission." *Buenrostro-Mendez v. Bondi,* 166 F.4th 494, 503 (5th Cir. 2026) ("The Supreme Court has observed that 'redundancies are common in statutory drafting—sometimes in a congressional effort to be doubly sure, sometimes because of congressional inadvertence or lack of foresight, or sometimes simply because of the shortcomings of human communication' . . . . That seems doubly true where the ordinary meaning of the terms involved overlap. Because being an applicant ordinarily entails seeking something, it seems natural to use the words somewhat interchangeably.") (quoting *Barton v. Barr*, 590 U.S. 222, 239 (2020)).

---

[2] *See Morales Perez v. Walsh*, 2026 WL 44777, at *2 (N.D. Ill. Jan. 7, 2026) ("[a]t a minimum, *Castañon-Nava* carries substantial persuasive weight. It is true that *Castañon-Nava* cautioned that its decision was limited to 'the current record.' [161 F.4th at 1061]. But the statutory-interpretation issue that the opinion resolved was one purely of law, and any adjustment to the factual record going forward would not likely alter the legal conclusion. In any event, as explained below, the Court agrees with *Castañon-Nava*'s holding on the legal question, so there is no need here to definitively decide whether it is binding precedent or something short of that.").

Even if the terms refer to different things, the Fifth Circuit found that petitioners such as Mr. Tologonov can be said to be "seeking admission" even though they have resided within the country for years and are not affirmatively seeking to enter the United States. *Id.*[3] Additionally, in *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026), the Eighth Circuit held that the meanings of "applicant for admission" and "seeking admission" and the grammatical structure of 8 U.S.C. § 1225(b)(2)(A) show that "in the context of the statute the two phrases are synonymous." *Id.* at 1135.

Countering those circuit decisions, the Second Circuit recently decided *Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026). There, the Second Circuit rejected the government's argument and adopted the reasoning set forth in *Castañon-Nava I*: "Although divided panels in two other circuits have agreed with the government, . . . we respectfully find the statutory analysis in those decisions, which largely mirrors the government's flawed arguments in this case, to be unpersuasive." *Id.* at 75. The court went on to conclude that "because Section

---

[3] *Buenrostro-Mendez* is somewhat complicated by *Rodriguez v. Ortega*, --- F.4th ---, No. 26-50183, 2026 WL 1906557 (5th Cir. July 2, 2026). In a decision issued after this matter was fully briefed, the Fifth Circuit left *Buenrostro-Mendez*'s interpretation of §§ 1225 and 1226 in place but also held that noncitizens subject to detention under § 1225(b)(2)(A) have a Fifth Amendment due process right to a bond hearing when detained for longer than 90 days. *Id.* at *16 ("We conclude that the Government may detain aliens under Section 1225(b)(2)(A) for ninety days but no longer without a bond hearing. . . . We are not ordering any particular process, and it is for the defendants to determine in what manner to provide such a hearing within those 90 days. . . . Our only requirement is that a hearing must be held within 90 days of the commencement of detention and that at the hearing, the Government must articulate an individualized justification for further detention without bond."). Because this Court concludes that Mr. Tologonov is entitled to a bond hearing by § 1226(a), the Court need not consider *Rodriguez*'s application to this case or what relief might be available under the Fifth Amendment.

7

1225(b)(2)(A) applies only to a noncitizen who is both an 'applicant for admission' and 'seeking admission,' it does not apply to Petitioner." *Id.* at 74. The Eleventh Circuit joined the Second Circuit in rejecting the government's expansive interpretation of § 1225. *Hernandez Alvarez v. Warden,* 175 F.4th 1258 (11th Cir. 2026).[4] The Sixth and Tenth Circuits came to similar conclusions. *See Lopez-Campos v. Raycraft,* 175 F.4th 713 (6th Cir. 2026);[5] *Santillan Quiroz v. Mullin,* No. 26-6019, 2026 WL 1876709 (10th Cir. June 30, 2026).[6]

This Court is not convinced that the Seventh Circuit will eventually join the *Buenrostro-Mendez* and *Avila* side of the circuit split. So, in line with *Castañon-Nava I* and now *Cunha, Hernandez Alvarez, Lopez-Campos,* and *Santillan Quiroz,* the Court continues to rely on its previous conclusion that § 1225(b)(2)(A) does not apply to undocumented aliens like Mr. Tologonov who

---

[4] "Simply put, the language that Congress has chosen to use does not grant to the Executive unfettered authority to detain, without the possibility of bond, every unadmitted alien present in the country. Nowhere in the text, structure, or history of the INA does that reading find steady footing. We are obliged to read the words found in the statute—'an alien who is an applicant for admission' and 'an alien seeking admission'—in line with the meaning Congress has given them. When we do so, it appears to us that Congress has instead preserved the longstanding border-interior distinction for purposes of detention, a position it has taken for over a hundred years." *Id.* at 1285.

[5] "We therefore find that an 'applicant for admission' is not necessarily 'seeking admission.' Because no Petitioner is alleged to be seeking admission or lawful entry into the United States, § 1225(b)(2)(A)'s mandatory detention scheme does not apply to them. And since '§ 1226 applies to aliens already present in the United States' and 'creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings,' Petitioners could have been detained pursuant to only § 1226." *Id.* at 732.

[6] "The only time a noncitizen can be said to be seeking admission is when he is seeking to enter the United States at the border. Since § 1225(b)(2)(A) applies only to those seeking admission, § 1225(b)(2)(A) is likewise limited to the border." *Id.* at *7 (footnote omitted).

have lived in the interior of the United States and were arrested on an administrative warrant "command[ing]" that he be arrested pursuant to 8 U.S.C. § 1226. 8-1 at 8.

Furthermore, Respondents' legal reasoning cannot not be reconciled with the government's treatment of Mr. Tologonov, *i.e.*, granting him parole, placing him in full removal proceedings, releasing him into the United States, and then arresting him in the interior of the United States, more than two years after the expiration of his parole, pursuant to an administrative warrant that explicitly authorized his detention under § 1226. Given the government's treatment of Mr. Tologonov, it cannot plausibly now maintain that he is subject to § 1225(b)(2)(A) and therefore categorically ineligible for discretionary release. *See Singh v. Bondi*, No. 1:25-cv-02101-SEB-TAB, 2025 WL 3029524, at *6 (S.D. Ind. Oct. 30, 2025) (citing *Patel v. Crowley*, 2025 WL 2996787, at *6 (N.D. Ill. Oct. 24, 2025); *Kennedy v. Kijakazi*, No. 22-2258, 2023 WL 1990303, at *3 (7th Cir. Feb. 14, 2023)).

The facts here are also quite different from *Buenrostro-Mendez* where the court's analysis did not indicate that the petitioners were arrested pursuant to an administrative warrant and then served with a Notice to Appear for full removal proceedings. *See Buenrostro-Mendez*, 166 F.4th at 500 ("DHS encountered each petitioner in 2025, and, upon inspection, immigration officers determined that each was inadmissible as an alien present in the United States without having been admitted or paroled . . . DHS commenced removal proceedings under 8 U.S.C. § 1229a against both petitioners, directing that they

9

be detained under 8 U.S.C. § 1225(b)(2)(A) for the duration of those proceedings."). In *Avila*, the petitioner was served with a Notice to Appear, but the record is silent as to whether he was arrested pursuant to an administrative warrant. *See* 170 F.4th at 1132. In contrast, Mr. Tologonov was served with an administrative warrant that authorized federal agents to detain him pursuant to § 1226. *Buenrostro-Mendez* and *Avila* therefore do not necessarily apply to the facts here.

In sum, the record demonstrates that Mr. Tologonov's detention is authorized only by § 1226(a), entitling him to consideration of bond.

## C.    Effect of Parole

Respondents argue that Mr. Tologonov is subject to mandatory detention under § 1225(b)(2)(A) because he applied for admission at a port of entry and was granted parole. Respondents' position is based on one provision of the INA and a related agency regulation.

The Secretary of Homeland Security may permit a noncitizen to enter the United States on parole according to 8 U.S.C. § 1182(d)(5)(A). "[W]hen the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien *shall forthwith return or be returned to the custody from which he was paroled.*" *Id.* (emphasis added). Additionally, the former parolee "shall continue to be dealt with in the same manner as that of *any other applicant for admission* to the United States." *Id.* (emphasis added).

Respondents argue that the "custody from which" Mr. Tologonov "was paroled" was that of an "arriving alien" as defined by 8 C.F.R. § 1001.1(q). An

arriving alien is "an applicant for admission coming or attempting to come into the United States at a port-of-entry." *Id.* "An arriving alien remains an arriving alien *even if paroled . . .* and *even after any such parole is terminated or revoked.*" *Id.* (emphasis added).  In short, as Respondents see it, Mr. Tologonov's parole permitted him to physically enter the United States, but he never ceased to be— for legal purposes—an arriving alien and applicant for admission at a port of entry. When his parole expired, he reverted to that position by operation of the INA and became, once again, subject to compulsory detention under § 1225(b)(2)(A).

The Court rejects Respondents' position.  First, § 1225(b)(2)(A) does not mandate the detention of "arriving aliens" as defined by regulation or even "applicants for admission" as referenced in § 1182(d)(5)(A). As the Court discussed at length in the preceding section, § 1225(b)(2)(A) applies only to an applicant for admission who is also *seeking admission.* The phrases carry different meanings. Section 1182(d)(5)(A) directs that a former parolee be treated like any other applicant for admission, but not every applicant for admission is seeking admission and subject to § 1225(b)(2)(A).

Second, § 1001.1(q) is an agency regulation. Its sole legal significance is to clarify how the agency applies the term "arriving alien." Through § 1225(b)(2)(A), Congress authorized the government to subject specified noncitizens to automatic, indefinite detention during removal proceedings. As discussed at length above, that authority does not extend to a noncitizen who is permitted to enter the United States, establishes residence, and then is arrested in the middle

11

of the country pursuant to a warrant citing a different statutory authority. Mr. Tologonov is not an applicant for admission who is seeking admission, so he is not subject to mandatory detention.

Third, this Court has rejected the argument that a noncitizen granted parole upon arrival automatically becomes subject to § 1225(b)(2)(A) upon expiration of parole. *See, e.g., Zafra Becerra v. Swearingen*, No. 2:26-cv-00438-JRS-MKK, dkt. 16 at *4–6 (S.D. Ind. July 7, 2026); *Madriz Ortiz v. Mullin*, No. 2:26-cv-00320-JPH-MKK, dkt. 11 at *5–7 (S.D. Ind. May 15, 2026). Those decisions have adopted the reasoning of *Qasemi v. Francis*, No. 25-CV-10029 (LJL), 2025 WL 3654098 (S.D.N.Y. Dec. 17, 2025), finding that the government's reliance on § 1182(d)(5)(A) to invoke § 1225(b)(2)(A) is misplaced. Respondents do not grapple with the reasoning of those decisions.

As *Qasemi* explains at length, § 1882(d)(5)(A) "does not state that a noncitizen is returned to the 'status' they held upon their parole, that they revert to status as an 'arriving alien,' or that they must be detained." 2025 WL 3654098 at *10. Rather, the statute directs that a former parolee be "returned to the *custody* from which he was paroled," and the "law and the statute draw a distinction between 'detention' and 'custody.'" *Id.* (emphasis added).

> "Custody" does not necessarily mean physical custody. It concerns any status under which a person or thing is under "the care and control of [another] for inspection, preservation or security." *Black's Law Dictionary* 390 (7th ed. 1999). [. . .]
>
> A noncitizen in asylum proceedings who is returned to the custody from which he was paroled loses the freedoms associated with parole status and is once again subject to the same constraints on liberty that apply to any noncitizen in removal proceedings without parole. [. . .]

12

He is restrained from working for a wage and from applying for Federal public benefits. Most important, without parole status, he is subject to detention even if he has not been accused of, arrested for, or committed a crime, so long as the Government determines that he presents a flight risk or a danger to the community. *See* 8 C.F.R. § 236.1(c)(8). Those are all freedoms enjoyed by the public generally but not enjoyed by a person such as Qasemi who is applying for admission to the United States but has not yet been admitted. It is this "custody" that Section 1182(d)(5)(A) contemplates a noncitizen must be returned to following termination of their parole. In other words, under Section 1182(d)(5)(A), the day after a noncitizen's parole status is terminated, under the INA that noncitizen is in the exact same position they were the day before, except that they no longer have parole status and the freedoms associated with it. The statute does not require the Court to pretend that Qasemi was never paroled and permitted to live freely in this country. A noncitizen is not reverted by operation of law to status as an arriving alien—they remain a noncitizen living in the United States who used to be paroled and must be treated by the INA accordingly.

*Id.* at *10–11.

Though *Qasemi* is not binding precedent, the Court finds its analysis persuasive. Applied here, Mr. Tologonov's "return to custody" under § 1182(d)(5)(A) does not mean a return to mandatory detention under § 1225(b)(2)(A). Instead, it means that he loses the benefits associated with parole and must be treated as any other applicant for admission arrested in the interior of the United States, pursuant to a warrant issued under authority of § 1226, years after entering.

### D.    Scope of Relief

Mr. Tologonov is eligible for release on bond under § 1226(a), and he has not received a bond hearing. His continued detention without a bond hearing therefore violates "the laws or treaties of the United States." 28 U.S.C.

13

§ 2241(c)(3). The remaining question is the remedy, which should be "appropriate to the violation." *Waller v. Georgia*, 467 U.S. 39, 50 (1984).

Mr. Tologonov asks for immediate release from custody, which is the customary remedy in habeas proceedings. *See Thuraissigiam*, 591 U.S. at 107 ("Habeas has traditionally been a means to secure release from unlawful detention."); *Munaf v. Geren*, 553 U.S. 674, 698 (2008) (explaining that "the quintessential habeas remedy" is release from custody). The Court finds that immediate release would not be in the interests of justice here. The Court has found that Mr. Tologonov is subject to § 1226(a), which may allow the government to "continue to detain" him. 8 U.S.C. § 1226(a)(1). Mr. Tologonov's custody is therefore not unlawful because he is detained, but because he has not received the bond hearing that the law requires.

As an alternative to immediate release, Mr. Tologonov asks the Court to order that his bond hearing be conducted according to specific standards not found in § 1226 and enjoin the government from taking certain actions in the event he is released on bond. Dkt. 1 at 25. This request is premature. The Court has ordered Respondents to either provide Mr. Tologonov with an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) and its regulations or release him. If Mr. Tologonov is not released after a bond hearing and believes that his hearing was deficient thereby making his continued detention unlawful, he may file a post-judgment motion raising such claims.

14

### E.    Remaining Claims

Because the Court has found that Mr. Tologonov's detention violates the INA, it does not reach his arguments that his detention violates the Fifth Amendment and the suspension clause. *See Thomas v. Illinois*, 697 F.3d 612, 613 (7th Cir. 2012) ("[C]onsistent with the principle of avoiding unnecessary constitutional decisionmaking, judges are to address the statutory defense before the constitutional.").

### III. Conclusion

The petition for a writ of habeas corpus is **granted** insofar as the respondents will have **ten days**[7] to either (1) provide Mr. Tologonov with an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) and its regulations, or (2) release him from detention under reasonable conditions of supervision. The respondents must notify Mr. Tologonov's counsel of the setting of any bond hearing. Respondents must file documentation certifying that they have either provided the bond hearing or released Mr. Tologonov within **two days** after the hearing or his release, whichever is applicable.

The petition is **denied** to the extent it seeks immediate release.

The **clerk is directed** to enter **final judgment**.

**SO ORDERED.**

Date: 7/10/2026

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

---

[7] This deadline may be modified without need for Court involvement upon agreement by Mr. Tologonov and the federal respondents.

Distribution:

Liberty L. Roberts
Church Church Hittle & Antrim
lroberts@cchalaw.com

Harun Taskin
Kent Law Partners LLC
htaskin@kentlawpartners.com

Paul Umbaugh, IV
DOJ-USAO
paul.umbaugh@usdoj.gov